MÉNDEZ, PETICIONARIA Y APELADA, *v.* MARTÍNEZ, OPOSITOR Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Aguadilla en procedimiento sobre declaratoria de herederos.

No. 1686.—Resuelto en enero 30, 1918.[1]

ALEGATO DEL APELANTE—EXPOSICIÓN DE ERRORES—ERRORES NO FUNDAMENTALES.—No es suficiente el expresar en forma narrativa en el alegato una a

---

[1] En febrero 18 denegada reconsideración.

una las alegadas infracciones.  Una exposición de errores por separado debe ser presentada a fin de que la corte pueda conocer en qué descansa el apelante sus pretensiones.  Es la alegación del apelante.  La argumentación debe concretarse a los errores señalados y la corte no considerará error alguno que no sea fundamental.

DECLARATORIA DE HEREDERO—COSA JUZGADA.—Un procedimiento *ex parte* en que se ha obtenido una declaratoria de heredero no puede ser considerado como cosa juzgada a tal extremo que una sentencia válida declarando el *status* de unos hijos no pueda ser utilizada para facilitar el que sean declarados herederos además de otro que lo ha sido ya.

HIJOS NATURALES—HEREDEROS.—Cuando el *status* de un hijo natural reconocido debidamente declarado por sentencia de corte competente es aquel de un heredero, el hecho declarado de ser un hijo natural reconocido lo hace un heredero de su padre sin ulterior declaración.

DECLARATORIA DE HEREDERO—HEREDEROS NO INCLUÍDOS EN LA MISMA.—Un procedimiento *ex parte* sobre declaratoria de heredero no perjudica ni excluye a otros herederos que no hayan sido incluídos en él, ni constituye un impedimento para los mismos.

HIJOS NATURALES—HEREDEROS—TESTAMENTO.—Un hijo natural reconocido es un heredero y tiene por tanto todos los derechos y responsabilidades de un hijo legítimo diferenciándose sólo uno de otro en grado y cantidad.

Los hechos están expresados en la opinión.

El apelante compareció en nombre propio y representado por su abogado Sr. Luis Muñoz Morales.

Abogados de la apelada: Sres. *Carlos Franco Soto* y *Juan B. Soto.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

De la decisión de la Corte de Distrito de Aguadilla aparece que Cecilia Méndez, en representación de sus dos hijos menores, Pedro Ángel y Laura, presentó una petición a dicha corte solicitando que, además de Víctor P. Martínez, hijo legítimo, los dichos Pedro y Laura, que son hijos naturales reconocidos, sean declarados herederos abintestato de Víctor Martínez y Martínez; que el causante común de todos estos hijos fué Víctor Martínez, que residía y falleció en San Sebastián, del distrito judicial de Aguadilla, el 26 de agosto de 1912; que por sentencia de la Corte de Distrito de Mayagüez el dicho Víctor P. Martínez fué declarado único y universal heredero abintestato de Víctor Martínez y Martínez; que los dichos menores, hijos naturales reconocidos, fueron decla-

rados tales en 4 de enero de 1915 por sentencia dictada en pleito seguido contra el referido Víctor P. Martínez ante aquella corte, y que la sentencia fué confirmada en apelación por la Corte Suprema de Puerto Rico, y es firme. Por lo cual, dicha corte declaró que, habiéndose llenado todas las formalidades de ley, los susodichos menores eran también, además de Víctor P. Martínez, herederos abintestato de Victor Martínez y Martínez en la porción que determina la ley.

Esta orden o decisión fué dictada *ex parte* el 26 de enero de 1917. En 25 de abril, 1917, Víctor P. Martínez presentó a la Corte de Distrito de Aguadilla una extensa moción de oposición. Contra esta moción la apelada presentó otra intitulada de impugnación. Tanto la moción de oposición como la de impugnación, fueron sometidas, sin argumentos, a la decisión de la corte. El 7 de mayo de 1917, la corte dictó una orden desestimando la moción de oposición. La presente apelación es contra esa orden.

El apelante no ha radicado la exposición de errores que exigen las reglas de esta corte. No es suficiente el expresar en forma narrativa en el alegato, una a una, las alegadas infracciones. Una exposición de errores por separado debe ser presentada a fin de que la corte pueda conocer en qué descansa el apelante sus pretensiones. Es la alegación del apelante. 3 C. J. 1328. La argumentación debe concretarse a las errores señalados y la corte no considerará error alguno que no sea fundamental. En el índice el apelante resume las infracciones alegadas y esto ha sido de alguna utilidad a la corte.

No es un error fundamental el que la apelada, en representación de sus hijos, registrara en la Corte de Distrito de Aguadilla su petición de declaratoria de herederos. El apelante no alega categóricamente que no tuviera conocimiento de la petición de Cecilia Méndez, pero sólo que no fué notificado. Además, como veremos más adelante, el litigio entre estas partes fué decisivo para el apelante quizás por razón de una de las mismas máximas que él invoca, a saber, que

"lo accesorio sigue a lo principal." La invocada sentencia de la Corte de Distrito de Mayagüez a favor del apelante, fué dictada *ex parte*. En los presentes procedimientos debe tenerse como cierto que Víctor Martínez y Martínez falleció dentro del distrito judicial de Aguadilla y que Aguadilla, más bien que Mayagüez, era la adecuada jurisdicción.

Un procedimiento *ex parte* en que se ha obtenido una declaratoria de heredero no puede ser considerado como cosa juzgada a tal extremo que una sentencia válida declarando el *status* de unos hijos no pueda ser utilizada para facilitar el que sean declarados herederos además de otro que lo ha sido ya. El fallo declarando el *status* de los hijos tiene una fecha posterior a la sentencia de Mayagüez.

La segunda infracción que se alega se refiere a no haber la corte citado al peticionario para comparecer ante ella, cuando fué presentada la solicitud de Cecilia Méndez. Dispondremos de esta supuesta infracción, al considerar la cuestión principal levantada en la tercera de las infracciones alegadas.

La cuarta infracción se refiere a no haberse anotado en el registro civil el *status* de los hijos, procedimiento que era inútil entre las partes como se verá más adelante en la discusión principal.

De las otras infracciones que han sido alegadas, unas carecen de importancia, y otras quedarán destruídas por razón de la cuestión principal en el caso.

La única cuestión verdaderamente sustancial es si Laura y Angel no tenían derecho a ser declarados herederos de su padre. En otras palabras, la cuestión surge con respecto a si los hijos naturales reconocidos, así debidamente declarados por una corte competente, son herederos de su padre. Para considerar una de las cuestiones subsidiarias diremos que si el *status* de un hijo natural debidamente reconocido es aquél de un heredero, entonces el hecho declarado de ser un

hijo natural reconocido le hace un heredero sin ulterior declaración. La muerte del causante en el caso de hijos legítimos les hace inmediatamente herederos. Por analogía, los derechos de los hijos naturales reconocidos, cualesquiera que sean, nacen del hecho de la muerte del padre. Si un hijo tiene que entablar una acción para establecer estos derechos, existe sin embargo un derecho adquirido a tener un *status* o condición determinada por la muerte del padre, y este derecho viene a quedar perfeccionado cuando se dicta la sentencia en favor del hijo natural. Un hijo legítimo está sujeto a una declaratoria de herederos, por razones diversas que son más bien adjetivas que sustantivas por su naturaleza. Un heredero legítimo debe, contra todo el mundo, identificarse como tal heredero. La declaratoria de heredero es el modo establecido de verificarlo, pero no es en todos los casos el único medio. Hemos resuelto varias veces que si en una causa de acción fuera esencial el derecho hereditario, debe ser probado como cualquier otro hecho y que una declaratoria no es indispensable. *Morales et al.* v. *Landrau et al.,* 15 D. P. R. 782; *Soriano* v. *Rexach,* 23 D. P. R. 573; *Fortis* v. *Fortis,* 25 D. P. R. 69, y 75 y 76. Siendo un procedimiento *ex parte,* no perjudica ni excluye a cualquier otro heredero que no haya sido incluído en la misma. Por ejemplo, si un viudo casare otra vez sin que llegue a conocimiento de sus herederos del primer matrimonio, la declaratoria en favor de tales herederos no sería decisiva para los herederos posteriores. Si algún procedimiento hubiera sido comenzado por los primeros herederos, los segundos habrían de ser permitidos intervenir, en cualquier estado del caso, mediante prueba de su calidad de herederos. Si ésta fuera impugnada, la corte podría ordenar que mientras no se resolviera la cuestión no se concedería la intervención, pero una mera declaratoria a favor de un heredero, nunca constituiría un impedimento para los otros.

Venimos ahora a la cuestión de si un hijo natural reconocido es un heredero. La más fuerte opinión en contrario la hallamos en los comentarios de Falcón a los artículos 939 *et seq.* del Código Civil Español, 3 Falcón 326, que dicen:

"El hecho que pronosticábamos antes de conocer la ley, se ha realizado ya después de la promulgación del Código. Los hijos naturales tienen ya un estado en la familia legítima, pues llevan el apellido de sus padres, están sometidos a su patria potestad, reciben alimentos y educación, tienen derecho a su defensa y protección, y el Código les designa una legítima y les coloca antes que a todos los colaterales en la sucesión intestada. ¿Qué les distingue ya de los hijos legítimos? Poco más que nada: que no le heredan cuando existen descendientes o ascendientes legítimos.

"Pero la ley carece de lógica: si les concedió porción legítima, con la misma razón ha debido admitirles en concurrencia con los legítimos a la sucesión intestada. Son derechos recíprocos que nacen uno en pos del otro. Quien es considerado como heredero forzoso para la sucesión testada, debe conservar el mismo carácter en la sucesión intestada. Eso han hecho todos los códigos, y en realidad, habrá más o menos justicia en sus disposiciones, pero a lo menos hay lógica. En la legislación, donde el hijo natural, el espúreo o el cónyuge son considerados como herederos forzosos, son también llamados a la sucesión intestada, y comparten en una o en otra porción con los descendientes y ascendientes legítimos, la herencia del padre o madre natural que murió intestado.

"Pero aparte de esta inconsecuencia de nuestra ley novísima, hay que confesar que todas sus concesiones a la descendencia natural son otros tantos actos de debilidad. Nuestro derecho histórico fundó siempre el derecho sucesorio en la familia legítima. Las leyes tradicionales, para los efectos de sucesión, no reconocían más parientes que los que formaban el matrimonio legítimo. El nuevo código ha pretendido defender este principio; pero temiendo a la vez aparecer intransigente, no se ha atrevido a defenderlo en su totalidad. Los parientes colaterales quedan sacrificados, y éste es el sacrificio que la nueva ley ofrece a las exigencias de la época, que van teniendo en menos los lazos santos de la familia legítima."

Esto fué interpretando el Código Civil Español. Sin embargo, en 1902, nuestra legislatura dijo en castellano "Son

herederos forzosos,'' pero en inglés, *The following are heirs,*
al tratar de los herederos forzosos e incluyendo a los hijos
naturales reconocidos. Esta fué la ley hasta 1905 en que fué
enmendada, pero la intención de la legislatura, como hemos
indicado en el caso de *Celis Alquier* v. *Méndez,* 18 D. P. R.
88, fué el sustituir los hijos naturales por hijos ilegítimos.
Es cierto que el texto inglés fué también enmendado al mismo
tiempo para que se leyera *forced heirs,* pero no se deduce
necesariamente del uso de la palabra *forced* que la legis-
latura tuviera la intención de que los hijos naturales reco-
nocidos fueran herederos sólo cuando hubiera testamento.
Esta fué una situación vacilante, como claramente lo reco-
noce Falcón, y bastó una leve presión por parte de nuestra
legislatura para inclinar la balanza en todos los casos a favor
del derecho hereditario de los hijos naturales reconocidos.

A excepción de ligeras indicaciones que hemos encontrado
aquí y allá en los comentarios de Falcón y de Manresa, no
hallamos razón lógica alguna para decir que los hijos natu-
rales reconocidos no son herederos. El Código Español y la
ley de 1905 proveen que los hijos naturales legalmente reco-
nocidos tendrán derecho a una porción igual a la mitad de la
que corresponde a los hijos legítimos. El Código Español,
en su artículo 843, claramente establece que los derechos así
reconocidos son transmisibles a sus descendientes. ¿Qué es
un heredero? En el derecho romano era una prolongación
de la personalidad del causante. Uno no puede percibir bie-
nes sin responder de las deudas, y su devolución y la respon-
sabilidad eran en un principio imperativas. Más tarde se
permitió al heredero rehusar la herencia. Bajo el Código
Español el hijo natural reconocido llevaba el apellido de su
padre. Recibía determinada porción de su caudal, con de-
recho a traspasarla, y, de hecho, los gastos de los funerales
recaían primero sobre el tercio de libre disposición asignable
a los hijos naturales reconocidos en casos de herencia for-
zosa. Nadie puede dudar que la responsabilidad sería simi-

lar en sucesiones intestadas y que los acreedores podrían sujetar a embargo tales porciones hereditarias al igual que si pertenecieran a herederos legítimos. Los hijos naturales reconocidos, por tanto, tienen todos los derechos y todas las responsabilidades de un hijo legítimo. Aquellos y éstos sólo se diferencian en grado y cantidad.

Si la legislatura hubiera dicho que los hijos naturales reconocidos no habrían de ser herederos forzosos cuando hubiere descendientes legítimos, *non constat* que ellos fueran herederos en la porción asignada dentro del tercio de libre disposición sobre el que el testador tiene opción. Esto significaría, como en los países donde no existe la legítima, que un testador, al igual que aquí se puede hacer en contra de los herederos colaterales, podría disponer de la porción correspondiente a los hijos naturales a falta de testamento. No estaría obligado entonces a respetar la herencia de sus hijos naturales cuando tuviera hijos legítimos. Pero nos parece que el sostener que los hijos naturales son herederos forzosos cuando hay testamento, sería reconocer que existe la herencia no forzosa. Que tales hijos no tengan derecho a una porción legal, no destruye su *status* o condición de herederos. Históricamente, las sucesiones intestadas precedieron a las sucesiones testadas. La sucesión universal existió mucho tiempo antes de que fueran creadas las porciones legítimas. El heredero forzoso es un producto posterior de la jurisprudencia romana. Si hijos son herederos forzosos cuando no hay hijos legítimos y tienen derecho a una específica porción hereditaria cuando no hay testamento o cuando de alguna parte no se ha hecho disposición, ellos tienen un derecho hereditario y son necesariamente herederos. Esta corte ha conceptuado generalmente, a los hijos naturales reconocidos como herederos, tanto antes como después de la ley de 1905. *Ex parte Smith et al.,* 14 D. P. R. 664; *Puente* v. *Puente,* 16 D. P. R. 582; *Rivera* v. *Cámara,* 17 D. P. R. 529; *Casiano* v. *Luchetti,* 24 D. P. R. 114.

Si, pues, el efecto de una sentencia es poner a un hijo natural reconocido en la misma relativa posición en que se encuentra antes de la declaratoria un hijo legítimo, entonces lo más que puede exigírsele a un hijo natural es que obtenga una declaratoria, como se hizo en este caso. Entre estos hijos naturales y Víctor P. Martínez no era necesaria una absoluta formalidad, pues él necesariamente tenía conocimiento del hecho legal establecido por la sentencia de enero 19, 1915. Ningún hecho podía haber quedado más solemnemente establecido. Pero aparte de esto, creemos que no era necesaria acción alguna de nulidad de una declaratoria anterior para obtener el formal reconocimiento de un derecho posteriormente perfeccionado. No es posible imputar abandono a estos hijos o alegar prescripción, especialmente porque era dudoso que la sentencia de enero 19, 1915, pudiera ejecutarse hasta que en 1916 fué confirmada por esta Corte Suprema. Ni puede favorecer al apelante el que los hijos no inscribieran su *status* en el registro civil. Ellos tenían algo más solemne en la sentencia de la corte. No podemos repetir demasiado que el *status* o condición legal de estos hijos quedó establecido por la sentencia de enero 19, 1915, y contra la única persona que tenía un interés contrario tal como fué declarado por la Corte de Distrito de Mayagüez. La sentencia de enero, 1915, destruyó cualquier efecto que la sentencia de Mayagüez hubiera podido tener en contra de dichos hijos. El si eran o no tales herederos, es la única cuestión importante a determinar en esta apelación, y la misma ha quedado decidida en sentido adverso al apelante.

*Confirmada la resolución apelada.*

Jueces concurrentes: Sres. Asociados del Toro y Hutchison.

Los Jueces Sres. Presidente Hernández y Asociado Aldrey no intervinieron en la resolución de este caso.